UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-CR-0229-CVE |
| | ) | |
| SAMUEL GARCIA-ESCALERA, | ) | |
| a/k/a Poncho, | ) | |
| a/k/a Escalera Samuel Garcia, | ) | |
| a/k/a Panfilo Waumuchil Soyte, | ) | |
| JOEL DELOERA-ESCALERA, | ) | |
| a/k/a Roberto, | ) | |
| a/k/a Joel Doloera, | ) | |
| a/k/a Luis Perez-Hernandez, | ) | |
| COURTNEY RILEY, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Now before the Court are the following motions: Defendant Garcia-Escalera's Motion for

Pretrial Determination of Admissibility of Alleged Co-Conspirator's Statements and Brief in

Support (Dkt. # 48); Garcia-Escalera's Motion to Suppress Statements (Dkt. # 49); Garcia-

Escalera's Motion to Suppress Evidence from 476 South 78th East Avenue and the Fruits of that

Evidence (Dkt. # 50); and Defendants' Garcia-Escalera and Doloera-Escalera's Joint Motion to

Suppress Evidence and Statements (Dkt. # 51). Defendants Samuel Garcia-Escalera, Joel Deloera-

Escalera, and Courtney Riley are charged with conspiracy to possess with intent to distribute and

to distribute at least 500 grams of a mixture or substance containing methamphetamine (count one).

In addition, Garcia-Escalera is charged with maintaining a drug involved premises (count two) and

being an illegal alien in possession of a firearm (count four), and Deloera-Escalera is charged with

the same offenses (counts three and five). A pretrial motions hearing was held on February 4, 2014,

and the government offered the testimony of Tulsa Police Department (TPD) Officer W.R. Mackenzie and Oklahoma Bureau of Narcotics (OBN) Agent John Morrison.  Defendant Garcia-Escalera testified in support of his motion to suppress statements (Dkt. # 49).  The government requested leave to present additional witnesses and, on February 5, 2014, the Court heard the testimony of Courtney Riley concerning defendant Garcia-Escalera's ability to speak and understand English.[1]  The Court also heard supplemental testimony from Oklahoma Bureau of Narcotics Agent John Morrison about the execution of a search warrant at 1515 South 67th East Avenue and the information provided to the officers who executed the warrant.

## I.

On the morning of January 8, 2013, Mackenzie and other backup officers executed a search warrant at 12427 East 27th Street, Tulsa, Oklahoma.  Mackenzie knocked on the door and announced the presence of TPD officers, but no one answered the door.  TPD Officer C. Collins breached the front door and entered the residence, and he encountered a female who identified herself as Courtney Riley.  Officers asked Riley if any one else was in the residence, and she advised the officers that "Todd" was in the shower.  Officers discovered Todd Diaz hiding in the shower, and Riley and Diaz were detained while the officers executed the warrant.  Police found methamphetamine, digital scales, drug notations, and $203 in United States currency.  A field test showed that the weight of the methamphetamine exceeded 500 grams.

---

[1]     Courtney Riley did not join in any of the pending motions and she was excused from attendance at the pretrial motions hearing on February 4, 2014 for the reasons stated in sealed Dkt. # 61.  However, the government called her as a witness at the continued pretrial motions hearing on February 5, 2014.

Mackenzie advised Diaz of his <u>Miranda</u> rights, and Diaz stated that he wished to speak to Mackenzie. Diaz was "extremely cooperative," and he told officers where they could find more methamphetamine hidden in the residence. Diaz identified his supplier as "Pancho"[2] and he stated that Pancho sold him four pounds of methamphetamine twice a month. Pancho had been Diaz's supplier for about eight months. According to Diaz, Diaz had delivered $10,000 to Pancho on the evening of January 7, 2013, and he believed that the money was delivered to Pancho's residence. Diaz paid $18,000 a pound the first time he purchased methamphetamine from Pancho, but they subsequently negotiated a deal under which Diaz would pay $60,000 for four pounds of methamphetamine. Diaz had traded vehicles with Pancho on January 7, 2013, and Pancho was borrowing Diaz's maroon Dodge truck. Diaz was driving Pancho's black Chrysler 300. Mackenzie's report states that Pancho put a hood over Diaz's head and made him lie down in the back of a vehicle. Pancho drove around and took off the hood once they were inside a residence, and it does not appear that Diaz was permitted to see the outside of the residence. Pancho retrieved four pounds of methamphetamine, and the hood was placed on Diaz's head before they exited the residence. Mackenzie testified that he did not believe that Diaz was required to follow this procedure for every drug transaction, and he did not intend for his report to suggest that Diaz was hooded during each purchase.

Diaz agreed to assist officers in locating Pancho's residence, and he took them to 476 South 78th East Avenue, Tulsa, Oklahoma. When they drove by the residence, Mackenzie observed a

---

[2]      As the investigation proceeded, various reports and documents refer to "Pancho" or "Poncho," but the documents refer to the same Hispanic male drug supplier identified by Diaz. For the purpose of consistency, the Court will refer to the Hispanic male identified by Diaz only as "Pancho."

maroon Dodge truck parked in the driveway.  Diaz also provided Mackenzie with Pancho's cell

phone number.  TPD Officer Tim Wilson was in the patrol car when Diaz directed Mackenzie to

Pancho's residence, and he heard Diaz describe the hooding procedure used by Pancho.  Wilson

testified that Diaz explained that he was hooded during the beginning of his business relationship

with Pancho, and he did not believe that Diaz was required to be hooded during every drug purchase

at Pancho's residence.

Mackenzie prepared an affidavit for a search warrant of 476 South 78th East Avenue.  In

relevant part, the affidavit states:

> [Diaz] stated that he understood his rights and that he would talk with me. [Diaz] was
> extremely cooperative during this investigation. [Diaz] immediately directed officers
> to the methamphetamine located within his residence. [Diaz] stated the following
> facts about his methamphetamine supplier.
>
> •        That he gets four pounds of methamphetamine from an unknown Hispanic
>          male twice a month.
> •        That he has been getting methamphetamine from this suspect for
>          approximately eight months.
> •        That he goes to a residence in the area of 4th and memorial to picks [sic] up
>          the methamphetamine.
> •        That he also goes to this residence to pay for methamphetamine he has
>          already sold.

Dkt. # 50-2, at 2.  Mackenzie did not mention any facts concerning Pancho's procedure of placing

a hood on Diaz's head and driving to an undisclosed location to retrieve the methamphetamine.  The

affidavit states that Diaz traded vehicles with the drug supplier, and that he was borrowing the

supplier's Chrysler 300.  Mackenzie stated that Diaz had accompanied him to the supplier's

residence, and that Diaz's vehicle was parked in the driveway.  He also stated that Diaz had "picked

up methamphetamine from this residence and has delivered currency to this residence several

times."  Id.

A state court magistrate signed the warrant authorizing Mackenzie to search for methamphetamine and "monies or unexplained wealth, records and financial records in physical, digital or electronic form, proof of residency, cellular phones, keys, safes, surveillance equipment, firearms." Dkt. # 50-5. Before serving the search warrant, TPD Officer C. Moyer observed a women enter the residence and leave shortly thereafter in a vehicle. The woman's vehicle was stopped and she identified herself as Deborah Goins. She stated that she had just left Pancho's house and she stopped by the house to use the restroom. She had a key to the residence, but she left the residence unlocked when she left. At 1:45 p.m., officers executed the warrant and found over $4,000 in United States currency in two pants pockets, marijuana, a loaded semi-automatic handgun and ammunition, cellular telephones, keys and title to a Chrysler 300 vehicle, a Mexican identification card, and drug notations. Dkt. # 50-6. Garcia-Escalera was present in the residence when the warrant was executed, and Mackenzie advised Garcia-Escalera of his <u>Miranda</u> rights. The <u>Miranda</u> warning was read to Garcia-Escalera in English. Garcia-Escalera shook his head or verbally responded to indicate that he understood his <u>Miranda</u> rights and, in response to questioning in English by Mackenzie, he  made the following statements:

- he identified himself as Rogelio Vasquez

- he stated that he had a firearm for protection

- he denied that he had any drugs

- the money found in the pants pockets did not belong to him

- he stated that he did not own a vehicle

- he denied that his nickname is Pancho

- none of the cellular phones found in the residence belonged to him.

Mackenzie testified that he does not speak Spanish and that he did not attempt to ask Garcia-Escalera any questions in Spanish.

Garcia-Escalera testified at the suppression hearing and offered a different description of the search of 476 South 78th East Avenue.  He testified that he is a citizen of Mexico who had been illegally in the United States for about five or six months at the time of his arrest, and he claims that he has a limited understanding of the English language.  According to Garcia-Escalera, he was asleep on a couch when police came to execute the search warrant, and he heard police announce their presence outside of the front door.  He answered the door after police had partially broken the door.  He claims that he was immediately thrown to the ground and handcuffed, and multiple police officers were yelling and screaming.  He testified that he was placed in a chair for questioning, and police threw him into the chair and hit him.  Garcia-Escalera testified that a police officer with a beard, whom he identified at the hearing as Mackenzie, yelled at him in English and he may have heard the word "silence," but his Miranda rights were never read to him in Spanish.  He also claims that Mackenzie tried to speak Spanish, but he spoke Spanish badly and he may have been trying to say "cooperate" in Spanish.  He admits that he said the name "Rogelio Vasquez," but he believed that police were asking him where he worked.  Garcia-Escalera testified that he did landscaping and gardening work with an individual known as Rogelio Vasquez.

On January 23, 2013, Diaz, Riley, and Samuel Garcia-Escalera were charged in state court with various drug possession and trafficking offenses, but the investigation into Samuel Garcia-Escalera's drug trafficking activities continued.  OBN Agent Morrison assisted Mackenzie with the investigation, and Morrison and Mackenzie continued to gather more information about a Garcia-Escalera's possible drug trafficking organization.

Morrison prepared an affidavit for a search warrant for 1515 South 67th East Avenue, Tulsa,[3] and the warrant was presented to a state court magistrate on August 20, 2013.  In his 20 page affidavit, Morrison included five pages of factual allegations concerning probable cause for the search warrant and the reliability of three confidential informants (CI) who provided information to Morrison.  Morrison received information from CI 1 that a hispanic male known as "Joel" or "Roberto" had a stash house for methamphetamine near 15th Street and Sheridan Avenue, and CI 1 directed Morrison to the residence.  The residence was a duplex located at 1515 South 67th East Avenue.  CI 1 claimed to know of another stash house near Pine Street and Harvard Avenue, but CI 1 did not know the exact location.  Morrison stated that CI 1 provided specific information about the stash house near 15th Street and Sheridan Avenue, and the information was corroborated by other informants.  CI 1 had provided accurate information in previous investigations.

The affidavit states that Morrison interviewed CI 2 on July 25 and August 9, 2013 about a possible methamphetamine trafficking organization in Tulsa.  CI 2 specifically identified "Samuel Garcia" as Pancho, and CI 2 had knowledge that Garcia-Escalera was distributing methamphetamine.  In January 2013, CI 2 met Garcia-Escalera at his house to pick up a delivery of methamphetamine, and CI 2 waited at the residence until another hispanic male, "Roberto," arrived with the methamphetamine.  Garcia-Escalera was arrested shortly after this transaction, but "Roberto" contacted CI 2 and told CI 2 to pay Roberto for the methamphetamine.  CI 2 paid Roberto and they continued to engage in drug transactions.  CI 2 was arrested in February 2013.  Roberto

---

[3]   At the suppression hearing, counsel for defendant Doloera-Escalera noted that the search warrant lists the address for the place to be searched as 1515 North 67th East Avenue, and he argues that this mistake renders the warrant facially invalid.  Defense counsel also identified one instance in the affidavit for search warrant where the address is incorrectly stated.  See Dkt. # 51-1, at 15.

refused to sell methamphetamine to CI 2 after his/her release from prison, because he was concerned that CI 2 may be working as an informant.  However, Roberto changed his mind and, in March 2013, Roberto began selling methamphetamine to CI 2 again.  CI 2 reported that he/she was required to go to a duplex near 15th Street and Sheridan Avenue to pick up the methamphetamine.  CI 2 described the duplex in detail and stated that a gray Nissan Altima was parked in front of the duplex. CI 2 stated that there was little or no furniture inside the duplex and it was simply a stash house for methamphetamine.  On August 9, 2013, the CI 2 directed Morrison to the duplex, and it was same duplex identified by CI 1.  In addition, there was a gray Nissan Altima parked in front of the duplex.

In his affidavit, Morrison also described his interviews with CI 3.  CI 3's relationship with Garcia-Escalara and his organization began in November 2011, and CI 3 sold methamphetamine for the organization from November 2011 to June 2013.  CI 3 stated that Garcia-Escalera was the leader of the organization until his arrest in January 2013, and Roberto took over the organization after Garcia-Escalera's arrest.  CI 3 identified the duplex at 1515 South 67th East Avenue as a stash house for Roberto.  CI 3 also claimed that another stash house was located at 1526 North Florence Avenue, Tulsa, Oklahoma.  CI 3 stated that Kiah Fields operated the stash house on North Florence Avenue, and CI 3 had gone to this stash house twelve times to purchase methamphetamine.  CI 3 estimated that as much as 15 to 20 pounds would be found inside the stash house.  CI 3 also claimed he/she had observed two sawed off shotguns, one rifle, and two handguns.

Morrison explained that each CI was interviewed separately and did not have knowledge of the other CIs.  He identified three specific instances in which CI 1 had participated in previous investigations, but he noted that CI 1 had provided information in more than 25 other cases.  As to CI 2 and CI 3, he noted that their information was corroborated by other informants, and he had no

knowledge that the informants had communicated with one another.  He also stated that they provided specific information about their own involvement in criminal activity, and informants who gave such specific information without minimizing their own roles tended to be more reliable.

The warrant was signed by a state court magistrate, and TPD officers executed the warrant on August 21, 2013.  The warrant identified the address of the place to be searched as "1515 North 67th East Avenue, Tulsa, Tulsa County, Oklahoma," and describes the property as follows:

> The residence is a duplex located **south** of 15th Street on 67th East Avenue.  It is on the east side of 67th East Avenue and faces west towards the street.  The residence is a single story, multi-family duplex.  The duplex is connected to another duplex just to the south of it.  The structure is a combination of wood and brick.  The wood is green in color and the brick is tan.  The residence has shingles that are black in color.

Dkt. # 51-1 (emphasis added).  Police recovered two Tupperware containers containing rice and loose crystals of methamphetamine, 11 grams of shard crystal of methamphetamine, digital scales with methamphetamine residue, baggies, and three firearms.  TPD officers found Doloera-Escalera in the duplex and placed him under arrest.  After receiving a <u>Miranda</u> warning, he claimed that rice was a home remedy for an undisclosed allergy, and he did not believe that the officers had found methamphetamine in the duplex.  He denied ownership of the guns, but claimed that he used them for protection.  He also asked why he was being arrested and claimed that police had no evidence that he had committed a crime.

## II.

### A.

Defendant Samuel Garcia Escalera requests a pretrial hearing to determine the admissibility of coconspirator statements.  Dkt. # 48.  The government asserts that a pretrial hearing is unnecessary and any coconspirator statements are provisionally admissible under Fed. R. Evid.

801(d)(2)(E) without a pretrial hearing.  Dkt. # 54.  Under Rule 801(d)(2)(E), a statement is not considered hearsay if the court finds that "(1) a conspiracy existed; (2) both the declarant and the defendant against whom the declaration is offered were members of the conspiracy; and (3) the statement was made in the course of and in furtherance of the conspiracy."  United States v. Eads, 191 F.3d 1206,  1210 (10th Cir. 1999) (quoting United States v. Caro, 965 F.2d 1548, 1557 (10th Cir. 1992)).  For Rule 801(d)(2)(E) to apply, the government must establish the existence of a conspiracy at some point in its case-in-chief, or the statements must be excluded.  United States v. Kaatz, 705 F.2d 1237, 1244 (10th Cir. 1983).  A court "can only admit coconspirator statements if it holds a *James* hearing [before trial] or conditions admission on forthcoming proof of a 'predicate conspiracy through trial testimony or other evidence.'"  United States v. Townley, 472 F.3d 1267, 1273 (10th Cir. 2007) (quoting United States v. Owens, 70 F.3d 1118 (10th Cir. 1995)).  A district court may rely on the statements and observations of other coconspirators to support its finding that a conspiracy existed.  Owens, 70 F.3d at 1124-25.  If a coconspirator statement is admissible under Fed. R. Evid. 801(d)(2)(E), the requirements of the Confrontation Clause of the Sixth Amendment are also satisfied.  United States v. Molina, 75 F.3d 600, 603 (10th Cir. 1996).

The government opposes defendant's motion and there is no Tenth Circuit precedent requiring a pretrial hearing to determine the admissibility of coconspirator statements.  Dkt. # 57. The Tenth Circuit has stated that it has a "preference" for a district court to hold a pretrial hearing. United States v. Gonzalez-Montoya, 161 F.3d 643, 649 (10th Cir. 1998).  However, the Tenth Circuit has clearly held that this is a preference only, and the district court retains discretion to hold a pretrial hearing or permit the government to "connect up" the statements to a conspiracy at trial. United States v. Urena, 27 F.3d 1487, 1491 (10th Cir. 1994).  The government will be required to

lay a proper foundation for admitting coconspirator statements by offering proof of the conspiracy and declarant and each defendant's membership in it before seeking to admit the statements, but defendant's motion for a <u>James</u> hearing is denied.

**B.**

Defendant Garcia-Escalera argues that he could not have knowingly and voluntarily waived his Fifth Amendment right against self-incrimination when he spoke to police following his arrest on January 8, 2013, because the <u>Miranda</u> warning was not read to him in Spanish and he has a limited understanding of the English language. Dkt. # 49, at 2. The government responds that defendant answered questions posed by Mackenzie and he gave no indication that he could not converse in English, and the fact that he gave false responses does not tend to show that he failed to understand the questions. The government has also offered the testimony of Courtney Riley to show that Garcia-Escalera conducted drug transactions in English and that he was able to converse with non-Spanish speakers without difficulty.

In <u>Miranda v. United States</u>, 384 U.S. 436 (1966), the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." <u>Id</u>. at 444. Under this rule, a court must suppress a statement, even if voluntary, if a proper warning was not given before police initiated custodial interrogation of a suspect. <u>United States v. Patane</u>, 542 U.S. 630 (2004); <u>United States v. McCurdy</u>, 40 F.3d 1111, 1117 (10th Cir. 1994). Once a <u>Miranda</u> warning has been given, police must refrain from interrogating a suspect if he unambiguously invokes his right to silence. <u>Michigan v. Mosley</u>, 423 U.S. 96, 101 (1975). However, a suspect impliedly waives his right to remain silent if he

11

receives a Miranda warning, understands the Miranda warning, and makes an uncoerced statement to police.   Berghuis v. Thomkins, 560 U.S. 370, 384-85 (2010).  The fruit of the poisonous tree rule does not apply even if defendant successfully proves that police obtained a statement through custodial interrogation without giving a Miranda warning.  United States v. Pettigrew, 468 F.3d 626, 636 (10th Cir. 2006).  The Miranda exclusionary rule requires only that the court exclude any "unwarned statement" itself.  Oregon v. Elstad, 470 U.S. 298, 307 (1985).  Even if police obtain a statement from a suspect in violation of Miranda, this does not taint a subsequent warned confession or statement if the statement was voluntarily made.  Elstad, 470 U.S. at 309; Pettigrew, 468 F.3d at 635.

Defendant argues that any statements made after the Miranda warning are inadmissible, because his waiver of his Miranda rights was involuntary.  The government bears the burden to prove by a preponderance of the evidence that defendant voluntarily waived his Miranda rights.  Colorado v. Connelly, 479 U.S. 157, 168-69 (1986).  The Court must consider the totality of the circumstances to determine whether defendant's waiver was voluntary.  United States v. Jones, 701 F.3d 1300, 1318 (10th Cir. 2012).  The Tenth Circuit has identified five factors that should be considered to determine whether a Miranda waiver was voluntary:

> (1) the age, intelligence, and education of the defendant; (2) the length of [any] detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of [his or] her constitutional rights; and (5) whether the defendant was subjected to physical punishment."

United States v. Carrizales-Toledo, 454 F.3d 1142, 1153 (10th Cir. 2006) (quoting United States v. Glover, 104 F.3d 1570, 1579 (10th Cir. 1997)).  These factors are not exclusive and a court should consider any other evidence showing that "the government obtained the statements by physical or

psychological coercion such that the defendant's will was overborne." Id. (quoting United States v. Rith, 164 F.3d 1323, 1333 (10th Cir. 1999)).

While it is preferable to read the Miranda warning to a Spanish-speaker in Spanish, this is not required if the person has a sufficient understanding of the English language that he can comprehend the warning and voluntarily waive his rights. United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999). When a person communicates with police in English, this is a relevant factor tending to show that a person's waiver of his Miranda rights was voluntary. United States v. Toro-Pelaez, 107 F.3d 819, 826 (10th Cir. 1997).

Riley testified that she had known Garcia-Escalera since June 9, 2012. She remembers the date clearly because it was her birthday. Riley testified that she went to a house off Harvard Avenue between Pine Street and Apache Street for a meeting about a drug transaction, and she admits that she used illegal drugs at the meeting. Riley remembers that she spoke to Garcia-Escalera for about two hours, and he repeatedly told her in English that she was pretty and that he wanted to have sex with her. Following the June 9, 2012 meeting, Riley spoke to Garcia-Escalera every day in person or by telephone. Riley does not speak Spanish and her conversations with Garcia-Escalera were always in English. The conversations ordinarily concerned drug transactions, and they discussed drug quantities, prices in United States dollars, and pickup or dropoff locations for drug transactions. Riley described Garcia-Escalera's English as "a little choppy" and she testified that he spoke with a heavy accent, but he was understandable and he never indicated that he could not understand something that Riley said in English. Riley has a clear recollection of events and dates, and she was also forthcoming about her own use of illegal drugs, even though she is charged as a defendant in

13

this case.  The Court has also considered her demeanor while testifying, and the Court finds that Riley's testimony is credible in its entirety.

Based on Riley's and Mackenzie's testimony, the Court finds that the government has presented sufficient evidence to establish that defendant spoke and understood English and that he understood the <u>Miranda</u> waiver read to him in English.  Garcia-Escalera conducted drug transactions with Riley even though she could not speak Spanish, and Riley's testimony shows that defendant was comfortable conversing in English, even though it was not his primary language.  In addition, the evidence shows that Garcia-Escalera's statements to Mackenzie were made in response to questions by Mackenzie, and this shows that he understood the questions and made appropriate, even if misleading, responses.  Although Garcia-Escalera has offered an alternate explanation for mentioning the name "Rogelio Vasquez," the Court finds that his testimony is not credible and the statements he made to Mackenzie make sense only if there were in response to questions asked by Mackenzie.  There is no evidence that police used an unlawful means to coerce responses to questions from Garcia-Escalera and the Court finds that he affirmatively indicated to Mackenzie, either verbally or by shaking his head, that he under the <u>Miranda</u> warning read to him in English. The Court also notes that defendant impliedly waived his <u>Miranda</u> rights by answering Mackenzie's questions, and Mackenzie was not required to obtain a formal <u>Miranda</u> waiver from Garcia-Escalera. <u>Berghuis</u>, 560 U.S. at 389.  The Court finds that defendant had a sufficient understanding of the English language to understand his <u>Miranda</u> rights and to understand Mackenzie's questions, and his motion to suppress statements made after his arrest (Dkt. # 49) is denied.

**C.**

Defendant Garcia-Escalera seeks the suppression of all evidence seized from 476 South 78th East Avenue, and Garcia-Escalera and Doloera-Escalera jointly request the suppression of evidence seized from 1515 South 67th East Avenue.  Defendants also request a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), because they claim that Mackenzie and/or Morrison deliberately or recklessly omitted information from their affidavits.  The government responds that defendant has not made a sufficient preliminary showing for a Franks hearing, and the affidavits of Mackenzie and Morrison contained enough evidence to support a finding of probable cause that methamphetamine or the instrumentalities of drug trafficking would be found at 476 South 78th East Avenue and 1515 South 67th East Avenue.  Dkt. ## 56, 57.

The Supreme Court has stated that probable cause is a "fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213 (1983).  In the context of search warrants, the Tenth Circuit requires that a magistrate issuing a search warrant find that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Tisdale, 248 F.3d 964, 970 (10th Cir. 2001) (quoting Gates, 462 U.S. at 238).  "Probable cause undoubtedly requires a nexus between suspected criminal activity and the place to be searched." United States v. Corral-Corral, 899 F.2d 927, 937 (10th Cir. 1990).  A magistrate may consider the affiant's experience as part of his probable cause determination.  United States v. Soussi, 29 F.3d 565, 569 (10th Cir. 1994).  When reviewing the search warrant affidavit, this Court must "interpret [the affidavit] in a common sense and realistic fashion." United States v. Grimmett, 439 F.3d 1263, 1270 (10th Cir. 2006).  A reviewing court must show great deference to the magistrate's finding of

probable cause and the magistrate's finding should be upheld if the magistrate had a "'substantial basis' for determining that probable cause existed." United States v. Perrine, 518 F.3d 1196, 1201 (10th Cir. 2008) (quoting United States v. Artez, 389 F.3d 1106, 1111 (10th Cir. 2004)).

Defendants request a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), as to both search warrants, because they claim that Mackenzie and Morrison made material mispresentations or omissions in their affidavits. "A defendant is entitled to a *Franks* hearing if he 'makes a substantial showing that the affidavit contains intentional or reckless false statements and if the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause.'" United States v. Cooper, 654 F.3d 1104, 1128 (10th Cir. 2011). The Tenth Circuit has stated that:

> Before the defendant will be entitled to such a hearing, however, the defendant must allege deliberate falsehood or reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. Affidavits of witnesses should be provided to the court or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. If these requirements are met, then the defendant must show that the remaining content of the warrant affidavit is insufficient to support a finding of probable cause. "The standards of deliberate falsehood and reckless disregard set forth in *Franks* apply to material omissions, as well as affirmative falsehoods."

United States v. Artez, 389 F.3d 1106 (10th Cir. 2004) (citations omitted).

**Search of 476 South 78th East Avenue**

Defendant Garcia-Escalera's request for a Franks hearing is based on a strained reading of certain statements in Mackenzie's affidavit. He argues that Mackenzie falsely stated that Diaz "goes to a residence in the area of 4th and memorial to picks [sic] up the methamphetamine." Dkt. # 50-2. Defendant claims that this is a false statement, because Mackenzie omitted facts about the alleged procedure of hooding Diaz and driving him to another location. However, Mackenzie's statement

accurately describes the evidence.  Diaz told Mackenzie that he went to defendant's residence for the purpose of picking up methamphetamine, and that he dropped off payment at the residence. While Mackenzie did not describe the hooding of Diaz, the evidence presented at the pretrial motions hearing shows that Mackenzie and Wilson did not believe that Diaz was hooded every time he went to defendant's residence.  Instead, Wilson testified that he thought that Diaz was describing defendant's conduct at the beginning of his business relationship with Diaz, and Wilson understood that Diaz actually went to defendant's residence to pick up methamphetamine.  Based on Diaz's statements, Mackenzie could reasonably have formed an opinion that Diaz went to defendant's residence for the purpose of purchasing, paying for, and picking up methamphetamine.  The omission of the hooding of Diaz on certain occasions does not constitute a material omission from Mackenzie's affidavit.  Defendant could be arguing that Mackenzie's omission of facts concerning the possible use of a stash house for methamphetamine constitutes a material omission.  This argument is meritless.  Mackenzie did not request a warrant for the stash house, because he would have had no basis to do so.  Instead, he sought a warrant for defendant's residence because he believed he had probable cause to establish that defendant's residence contained methamphetamine, instrumentalities or records of drug trafficking, and possibly evidence that could be used to locate the stash house.  The Court will consider whether Mackenzie's affidavit establishes probable cause for a search of defendant's residence without holding a <u>Franks</u> hearing, because defendant Garcia-Escalera has not made a sufficient preliminary showing for such a hearing.

The Court has reviewed the affidavit for a search warrant for 476 South 78th East Avenue and finds that it states sufficient facts from which a reasonable magistrate could have found probable cause to issue a search warrant for the residence.  The affidavit states that Diaz claimed to have

purchased methamphetamine from a Hispanic male known as "Pancho," and that the transactions occurred about twice a month.  Dkt. # 50-2, at 2.  Diaz would drive to a residence near 4th Street and Memorial Drive to meet his supplier, and he also would deliver payment for the methamphetamine to the same address.  Diaz also explained that he had traded vehicles with Pancho, and Mackenzie's observations confirmed that Diaz's maroon Dodge truck was parked in front of Pancho's residence.  Even though Mackenzie omitted information about a possible stash house for methamphetamine, it was reasonable for Mackenzie to believe that defendant kept methamphetamine and/or the instrumentalities of the drug trade at his residence.  The omission of evidence about a possible stash house does not detract from the existence of probable cause for a search of defendant's residence.  Garcia-Escalera's motion to suppress evidence seized from the search of his residence (Dkt. # 50) is denied.[4]

<u>**Search of 1515 South 67th East Avenue**</u>

<u>Franks Hearing</u>

As to the search of 1515 South 67th East Avenue, defendants request a <u>Franks</u> hearing to challenge the reliability of CI 3 and the alleged omission of certain facts in Morrison's affidavit. Defendants argue that police failed to disclose that CI 3 had provided inaccurate information in a previous investigation, and that this omission shows that police were attempting to mislead the magistrate who signed the search warrant.  Defendants also argue that Diaz claimed to have been blindfolded before being driven to a stash house, and this calls into question the reliability of the CIs

---

[4]      Garcia-Escalera also argues that any statement he made during or after the search should be suppressed, because the statements were made following a violation his Fourth Amendment rights.  Dkt. # 50, at 16.  The Court has found no Fourth Amendment violation based on the search of 476 South 78th East Avenue, and his request to suppress statements is also denied.

who claim to have visited a stash house maintained by Deloera-Escalera without being blindfolded. When probable cause is based on an informant's tip, "the court makes a probable cause determination based on the totality of the circumstances, including the informant's veracity, reliability, and basis of knowledge." United States v. Hendrix, 664 F.3d 1334, 1139 (10th Cir. 2011). These factors are not absolute requirements for a magistrate's reliance on information provided by an informant, and the reviewing magistrate must consider the totality of the circumstances in determining whether an informant's tip should be considered in the probable cause inquiry. Id. If there is sufficient independent corroboration of the informant's information, there is no need for a magistrate to consider the informant's reliability. United States v. Danhauer, 229 F.3d 1002, 1007 (10th Cir. 2000). If the basis for the informant's tip is not fully described in the affidavit, the court should consider whether the tip contains "the kind of highly specific or personal details from which one could reasonably infer that the [informant] had firsthand knowledge about the claimed criminal activity." United States v. Quezada-Enriquez, 567 F.3d 1228, 1233 (10th Cir. 2009).

Defendants' arguments are based on pure speculation, and they have not shown that they are entitled to a Franks hearing. Defendants argue that Morrison failed to include facts about the hooding of Diaz in his affidavit, and this constitutes a material omission because it calls into question whether a CI could have known the location of a stash house.[5] As to Morrison's alleged

---

[5]     Defendants argued in their motion to suppress that Morrison omitted information concerning the reliability of CI 3 based on defendants' assertion that CI 3 provided false information about the existence of a stash house at 1526 North Florence Avenue. Defendants withdrew this argument at the pretrial motions hearing but, even if they had not, the argument is meritless. Morrison's affidavit states that OBN and TPD planned to obtain a warrant for both possible stash houses and execute them simultaneously. Dkt. # 51-1, at 10. At the
(continued...)

omission of the hooding of Diaz, Morrison testified that was unaware of this fact when he prepared the affidavit and the Court finds that Morrison's testimony on this point is credible.   In any event, defendants have not shown that this is relevant to defendant Doloera-Escalera's operation of what could be a completely different stash house than the one maintained by Garcia-Escalera.   The testimony of Mackenzie and Wilson also shows that there was no reason to believe that Garcia-Escalera or his organization hooded all purchasers during every transaction.   Defendants must at least lay a preliminary evidentiary foundation in order to obtain a <u>Franks</u> hearing, and they have failed to do so.

<u>Incorrect Address in Warrant</u>

Defendants argue that the warrant incorrectly states the address of the place to be searched, and the warrant is facially invalid because it fails to satisfy the particularity requirement of the Fourth Amendment.   The issue was not raised in defendants' motion to suppress, but defendant Doloera-Escalera orally raised this issue at the pretrial motions hearing and he has submitted a supplemental brief (Dkt. # 68) on this issue.   The Court will also consider the two cases cited by Doloera-Escalera's counsel at the continued pretrial motions hearing on February 5, 2014.

The Fourth Amendment states that "[w]arrants shall . . . particularly describ[e] the place to be searched.   U.S. CONST. amend. IV.   The Tenth Circuit has stated that "[o]ur test 'for determining the adequacy of the description of the location to be searched is whether the description is sufficient

---

[5]        (...continued)
suppression hearing, Morrison testified that he presented the warrants for both addresses to the state court magistrate at the same time, and the warrants were executed simultaneously. This shows that Morrison could not have known the results of the search of 1526 North Florence Avenue when he requested the warrant for 1515 South 67th East Avenue, and defendant's claim that information was purposefully omitted from Morrison's affidavit is meritless based on the plain language of the affidavit.

to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premises might be mistakenly searched.'" United States v. Garcia, 707 F.3d 1190, 1197 (10th Cir. 2013) (quoting United States v. Lora-Solano, 330 F.3d 1288, 1293 (10th Cir. 2003)).  This particularity requirement is governed by the concept of "practical accuracy rather than technical precision," and "[a] technically wrong address does not invalidate a warrant if it otherwise describes the premises with sufficient particularity so that police can ascertain and identify the place to be searched." United States v. Brakeman, 475 F.3d 1206, 1211 (10th Cir. 2007).  The knowledge of the officer executing the warrant can be taken into account when determining the sufficiency of the warrant's description of the location to be searched. United States v. Occhipinti, 998 F.2d 791, 799 (10th Cir. 1993).  When an officer has personally visited or surveilled the premises to be searched, this knowledge of the location and its appearance should be considered by a court evaluating the adequacy of a warrant's description of the property. Harman v. Pollock, 446 F.3d 1069, 1079 (10th Cir. 2006).

Defendant argues that the warrant states the wrong address and that it fails to otherwise identify with particularity the location of the place to be searched.  Defendant claims that the warrant allows officers to look for any house on 67th East Avenue that is south of 15th Street that matches the description contained in the warrant, and he claims that the description in the warrant is so general that numerous residences could have been searched.  Dkt. # 68, at 4.  However, defendant's argument is based on his omission of a key piece of information stated in the warrant.  The warrant clearly states that the place to be searched had a street address of 1515 on 67th East Avenue, and

there only two houses on 67th East Avenue meeting this description.[6]  The streets identified in the

warrant are 15th Street and 67th East Avenue, and 67th East Avenue runs north and south.  It is

possible to have a house number of 1515 on North 67th East Avenue and South 67th East Avenue.

The warrant directs the police officers executing the warrant to a location "south of 15th street on

67th East Avenue."  Even if the address stated in the warrant is technically incorrect, the executing

officers were directed to a location south of 15th street, and this could describe only the house

located at 1515 South 67th East Avenue.  The warrant also provides a physical description of the

house.  Officers knew that the place to be searched was a single story duplex facing west, and that

the house had a green and tan exterior.  Defendant has offered no evidence that the house located

at 1515 North 67th East Avenue is identical or even substantially similar to the house located at

1515 South 67th East Avenue.[7]

The Court also heard supplemental testimony from Morrison, and it is clear that the police

officers executing the warrant knew that the warrant was for 1515 South 67th East Avenue.

Morrison testified that he did not participate in the execution of the warrant for 1515 South 67th East

Avenue, but he met with Mackenzie and took Mackenzie to the location before the search warrant

was executed.  Mackenzie did participate in the execution of the search warrant.  Morrison also met

with the officers who would be executing the search warrant, and he provided them with copies of

---

[6]     Deloera-Escalera argues that warrant authorized officers to look for any residence on 67th East Avenue meeting the description contained in the warrant.  Even though Morrison mistakenly listed the address as North 67th East Avenue, a reasonable officer executing the warrant would take the house number into account, and defendant has not argued that the the house number was incorrect.

[7]     At the pretrial motions hearing, counsel for Doloera-Escalera stated that he owns the house located at 1515 North 67th East Avenue.  However, he has not attached a picture of the house to his motion or supplemental brief.

the warrant, the affidavit, and photographs of 1515 South 67th East Avenue.  When officers executing the warrant have the affidavit and warrant, facts stated in the affidavit can be used clarify any typographical error in the address stated in the warrant.  Occhipinti, 998 F.2d at 799.  Although the affidavit once mistakenly refers to 1515 North 67th Avenue, the affidavit title and content repeatedly identifies 1515 South 67th East Avenue as the stash house for methamphetamine for which police are seeking a warrant.  A reasonable officer executing the warrant and who had a copy of the affidavit would have known that the place described in the warrant was 1515 South 67th East Avenue.[8]

The Court finds that the warrant contains a typographical error, but that the warrant describes with particularity the duplex located at 1515 South 67th East Avenue and the typographical error does not render the warrant facially invalid.  The Court also takes into account  the facts stated in the affidavit, including its title, because this affidavit was available to the officers executing the warrant.  Morrison's testimony further explained that Mackenzie participated in the execution of the warrant, and Morrison had taken Mackenzie to 1515 South 67th East Avenue before the warrant was executed.  Mackenzie's knowledge of the location and correct address of the place to be search also supports a finding that the warrant describes the place to be searched with sufficient particularity.  At the continued suppression hearing, Doloera-Escalera's counsel cited two Tenth Circuit cases concerning the particularity requirement of the Fourth Amendment, but neither case deals with the

---

[8]     The Court notes that Morrison prepared the same affidavit for 1515 South 67th East Avenue and 1526 North Florence Avenue.  It is reasonable to assume that Morrison inadvertently typed North 67th East Avenue once in the affidavit and in the warrant, because he was drafting the affidavit and both warrants at the same time.  There is no evidence that Morrison was intentionally trying to mislead the state court magistrate when he mistyped the address in the warrant for 1515 South 67th East Avenue.

treatment of typographical errors in a warrant.  See United States v. Dahlman, 13 F.3d 1391 (10th Cir. 1993) (warrant that described only subdivision lots did not sufficiently describe the houses to be searched, but police did not act in bad faith by relying on the warrants); United States v. Williamson, 1 F.3d 1134 (10th Cir. 1993) (warrant that contained completely wrong address with only minimal description of the place to be searched did not satisfy particularity requirement).  The Court finds that the search warrant for 1515 South 67th East Avenue described the place to be searched with particularity, and this is not a ground to find the warrant invalid.

Existence of Probable Cause for Warrant

Defendants argue that Morrison's affidavit fails to establish probable cause for a search of 1515 South 67th East Avenue.[9]  Dkt. # 51, at 14-16.  Defendants also claim that Morrison failed to conduct an adequate investigation and certain information in the affidavit was stale by the time he sought a search warrant.  Id. at 15.  The Court does not find that Morrison's alleged failure to

---

[9]     The government argues that Garcia-Escalera lacks standing to challenge the search of 1515 South 67th East Avenue, because the evidence shows that defendant Doloera-Escalera resided at the duplex and that the duplex was used as a stash house only after Garcia-Escalera was arrested.  Dkt. # 57, at 5-6.  To have standing to challenge a search warrant, the person asserting the challenge must have had a legitimate expectation of privacy in the place to be searched.  United States v. Barrows, 481 F.3d 1246, 1258 (10th Cir. 2007).  When a defendant's standing is challenged, the Court must consider "(1) 'whether the defendant manifested a subjective expectation of privacy in the area searched' and (2) 'whether society is prepared to recognize that expectation as reasonable.'"  United States v. Johnson, 584 F.3d 995 (10th Cir. 2009) (quoting United States v. Allen, 235 F.3d 482, 489 (10th Cir. 2000)).  Defendant argues that 1515 South 67th East Avenue was allegedly used a stash house for his drug trafficking organization, and he asserts a legitimate expectation of privacy sufficient to allow him to challenge the search of this residence.  Dkt. # 51, at 9.  At the suppression hearing, the Court asked Garcia-Escalera if he wished to withdraw his joinder in Dkt. # 51, and his attorney stated that defendant would not withdraw from the motion.  For the purpose of this opinion and order, the Court will assume that defendant has standing under the Fourth Amendment to challenge the search of 1515 South 67th East Avenue.

conduct a controlled buy or use other specific investigatory techniques identified by defendants constitutes proper grounds to challenge the warrant.  The law is clear that the Court's review is limited to the "four corners" of the affidavit, and the Court will consider whether the facts stated in the affidavit establish probable cause without regard to Morrison's alleged failure to use all possible means of investigation.  See Hackney, Inc. v. McLaughlin, 895 F.2d 1298, 1299-1300 (10th Cir. 1990).  As to defendants' argument that information in the affidavit was stale, the Court must consider "the nature of the criminal activity, the length of the activity, and the nature of the property to be seized."  United States v. Garcia, 707 F.3d 1190, 1195 (10th Cir. 2013).  Probable cause may be found, even if there is a substantial delay in seeking a warrant, when the affidavit "recites facts indicating ongoing, continuous criminal activity."  Id.  In this case, Morrison's affidavit alleges that CI 2 began purchasing methamphetamine at the duplex beginning at least in March 2013, and each CI believed that the duplex was still being used as a stash house when they were interviewed in July and August 2013.   The Court also notes that CI 1 and CI 2 claim to have purchased methamphetamine at the duplex in June 2013, and this is not such a substantial period of delay to the issuance of the warrant on August 20, 2013 that a reasonable magistrate was required to disregard the information that the CIs provided.

The Court has reviewed Morrison's affidavit and finds that it states sufficient facts from which a reasonable magistrate could have found probable cause to issue a search warrant for 1515 South 67th East Avenue.[10]  Morrison interviewed three CIs and each CI specifically identified the

---

[10]     Defendants argue that any statements made by Doloera-Escalera should suppressed, because he made the statements following a violation of his Fourth Amendment rights. Dkt. # 51, at 17.  The Court has found that warrant for 1515 South 67th East Ave was supported by probable cause and was a valid search warrant, and Doloera-Escalera has not established that
(continued...)

duplex as a stash house.  CI 1 and CI 2 had been to the duplex to purchase methamphetamine.  In particular, CI 2 purchased methamphetamine at the duplex at least 20 times between March and June 2013.  CI 2 and CI 3 specifically identified "Roberto" as the person distributing methamphetamine from the duplex.  CI 2 stated that he/she had observed a gray Nissan Altima in front of the duplex, and Morrison's observations confirmed that this vehicle was parked in front of the duplex.  This provided corroboration for CI 2's statements that he/she had been to the duplex.  Although Morrison did not conduct a controlled buy at the duplex, he relied on multiple CIs that independently corroborated one another, and the existence of multiple CIs describing the presence of illegal drugs or contraband weighs heavily in the probable cause analysis.  United States v. Widi, 684 F.3d 215, 221 (1st Cir. 2012); United States v. Reza, 315 Fed. Appx. 754 (10th Cir. Mar. 10, 2009)[11]; United States v. Spry, 190 F.3d 829, 836 (7th Cir. 2008).  The Court also notes that Morrison provided facts concerning each CI's reliability, and he noted that the information provided by each CI was corroborated by the other CIs.  He stated that "[e]ach informant was interviewed separately and does not have knowledge of the other informants or their participation."  Dkt. # 51-1, at 9.  The information provided by the CIs provides a "sufficient nexus" between the crime being investigated and the place to be searched, because three separate CIs told Morrison that methamphetamine would likely be found at the place, and at least two of the CIs had purchased methamphetamine at the duplex.

---

[10]    (...continued)
a Fourth Amendment violation occurred.  The Court finds no basis to suppress statements he made following execution of the search warrant for 1515 South 67th East Avenue.

[11]    Unpublished decisions are not precedential, but may be cited for their persuasive value.  See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

Even if the Court had found that one or both warrants were not supported by probable cause, the government argues that police relied on the warrants in good faith and, even if a Fourth Amendment violation occurred, no evidence seized should be suppressed. Dkt. # 38, at 3. There is a presumption that an officer relying on a warrant is acting in good faith and, although this presumption is not absolute, it "must carry some weight" with the Court. United States v. McKneely, 6 F.3d 1447, 1454 (10th Cir. 1993). When an officer relies on a warrant issued by a neutral magistrate, the good faith rule should apply unless the "the underlying documents are 'devoid of factual support'" or the officer's reliance on the warrant was "wholly unwarranted." Id. The good faith exception applies when "'an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope,' even though the search warrant was later deemed to be invalid." United States v. Herrera, 444 F.3d 1238, 1249 (10th Cir. 2006) (quoting United States v. Leon, 468 U.S. 897, 920 (1984)). Excluding evidence obtained by police in good faith reliance on a search warrant would not deter future police misconduct and would penalize police for a magistrate's error in issuing the warrant. Leon, 468 U.S. at 920-21. In Leon, the Supreme Court identified four exceptions to the good faith rule. If a warrant is invalid, the good faith rule does not prevent exclusion of evidence (1) "if the magistrate or judge issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;" (2) "where the magistrate wholly abandoned his judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979);" (3) in circumstances that "no reasonably well trained officer should rely on the warrant;" and (4) if a police officer relies on a warrant "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id. at 922-23. Defendants have not shown that either

27

Mackenzie's or Morrison's affidavit contained false or misleading information, and the good faith exception is applicable in this case. The Court also notes that the good faith exception is applicable when police execute a warrant with a technical mistake or typographical error and, even if the Court had found the warrant for 1515 South 67th East Avenue to be facially invalid, Morrison's testimony establishes that the officers executing the warrant for 1515 South 67th East Avenue had a good faith belief that they were searching the place described in the warrant. See Lora-Solano, 330 F.3d at 1294-95 (good faith exception applies to cases involving typographical errors in warrant).

**IT IS THEREFORE ORDERED** that Defendant Garcia-Escalera's Motion for Pretrial Determination of Admissibility of Alleged Co-Conspirator's Statements and Brief in Support (Dkt. # 48), Garcia-Escalera's Motion to Suppress Statements (Dkt. # 49), Garcia-Escalera's Motion to Suppress Evidence from 476 South 78th East Avenue and the Fruits of that Evidence (Dkt. # 50), and Defendants' Garcia-Escalera and Doloera-Escalera's Joint Motion to Suppress Evidence and Statements (Dkt. # 51) are **denied**.

**DATED** this 6th day of February, 2014.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

28