## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-CR-0229-001-CVE |
| | ) | (18-CV-0013-CVE-CDL) |
| SAMUEL GARCIA-ESCALERA, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Now before the Court is defendant's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (Dkt. # 276).  Under 28 U.S.C. § 2255, "a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."  Defendant Samuel Garcia-Escalera (defendant) argues that he received ineffective assistance of counsel throughout the criminal proceedings, and he asks the Court to vacate his convictions and sentence.  Dkt. # 276. Plaintiff responds that defendant has failed to provide adequate factual support for many of his vague allegations of ineffective assistance of counsel, and his attorney's performance was well within the range of reasonable professional conduct.  Dkt. # 283.  Defendant has filed a reply (Dkt. # 284) in which he requests discovery materials and an evidentiary hearing.

### I.

On December 2, 2013, a grand jury returned an indictment charging defendant Garcia-Escalera, Joel Deloera-Escalera, and Courtney Riley with conspiracy to distribute and possess with

intent to distribute 500 grams or more or a mixture or substance containing a detectable amount of methamphetamine.  Dkt. # 2.  The indictment also alleged drug and firearm offenses against defendant and Deloera-Escalera.  In February 2014, a grand jury returned a superseding indictment (Dkt. # 81) charging defendant and Deloera-Escalera with drug conspiracy (count one), but Riley was not charged with any offenses in the superseding indictment.  Defendant was also charged with maintaining a drug-involved premises (count two),  being an illegal alien in possession of a firearm (count four), and possessing a firearm in furtherance of a drug trafficking crime (count six).[1]

This case arose out of an investigation initiated by Tulsa Police Department (TPD) officers into the possible trafficking of methamphetamine and, on January 8, 2013, TPD officers executed a search warrant at 12427 East 27th Street in Tulsa, Oklahoma.  Dkt. # 73, at 2.  The officers encountered Riley and Todd Diaz in the house when they executed the search warrant, and police recovered methamphetamine, digital scales, and drug notations from the house.  Id.  Diaz cooperated with the police during their search and he offered to provide information about his supplier of methamphetamine.  Id. at 3.  Diaz identified his supplier as "Poncho" and he agreed to assist officers locate Poncho's residence.  Id.  Diaz also told officers that he had loaned his maroon Dodge truck to Poncho.  Id.  Diaz took the officers to 476 South 78th East Avenue, and they observed a maroon Dodge truck in the driveway.  Id. at 3-4; Dkt. # 241, at 67-68.  TPD Officer W.R. Mackenzie applied for a search warrant for 476 South 78th East Avenue, and he relied in his affidavit on information provided by Diaz.  The affidavit stated that Diaz obtained four pounds of methamphetamine at this address from an unidentified Hispanic male about twice a month, and Diaz had been using this

---

[1]     Deloera-Escalera was charged with maintaining a drug-involved premises (count three), being an illegal alien in possession of a firearm (count five), and illegal reentry (count seven).

arrangement with his supplier for approximately eight months.  Dkt. # 50-2, at 2.  Diaz went to a residence near 4th Street South and Memorial Drive to pick up and pay for drugs, and the affidavit recites that Diaz took the officers to the residence and pointed out Diaz's maroon Dodge truck in the driveway.  Id.

Mackenzie obtained a warrant to search 476 South 78th Avenue, and defendant was at the residence when officers arrived to execute the search warrant.  Dkt. # 73, at 5; Dkt. # 241, at 54. Police seized $4,050 found in defendant's pockets, and elsewhere in the house they found a loaded firearm, two cellular phones, papers that appeared to contain drug notations, and a Mexican driver's licence with defendant's picture bearing the name "Panfilo Soyte."  Dkt. # 241, at 49, 54, 57. Mackenzie gave defendant a Miranda[2] warning in English and defendant conversed the Mackenzie in English.  Id. at 129-31.  Defendant stated that his name was Rogelio Vasquez, and he claimed that he kept a loaded firearm for protection.  Id. at 131.  Defendant denied that the money taken from his pockets belonged to him, denied that he ever went by the name "Poncho," and denied that cell phones or drugs would be found in his house.  Id. at 132.  Defendant gave appropriate answers in English to Mackenzie's question and he never asked for an interpreter.  Id. at 133-34.

In July 2013, defendant appeared in the Northern District of Oklahoma on a charge of illegal reentry by a removed alien, and Marna Franklin was appointed to represent him.  United States v. Samuel Garcia-Escalera, 13-CR-130-CVE (N.D. Okla.).  Defendant was arraigned in this case on December 4, 2013, and Franklin was also appointed to represent him in this case.  Franklin filed pretrial motions to suppress evidence and statements (Dkt. ## 49, 50, 51), and the motions were set for an evidentiary hearing.  Franklin argued that defendant did not knowingly and voluntarily waive

---

[2]     Miranda v. United States, 384 U.S. 436 (1966).

his Fifth Amendment right against self-incrimination, because a <u>Miranda</u> warning was not read to him in Spanish and defendant has a limited understanding of the English language.  Dkt. # 49. Franklin challenged the validity of the search warrants for 476 South 78th East Avenue and a second search that took place at 1515 South 67th East Avenue.  Dkt. ## 50, 51.  The Court denied defendant's motions.  Plaintiff presented credible evidence that defendant regularly spoke English when conducting drug transactions and, although English was not his first or primary language, there was sufficient evidence that defendant understood the <u>Miranda</u> warning given to him by Mackenzie. Dkt # 73, at 14.  The Court also rejected defendant's request for a <u>Franks</u>[3] hearing and found that probable cause existed for both search warrants.  <u>Id.</u> at 16-26.

Franklin determined that she needed the services of a private investigator to interview witnesses and investigate certain claims made by defendant, including his alternate explanation for his possession of a large amount of currency,[4] and the Court approved Frankin's request for funding to hire a private investigator.  Dkt. ## 52, 53.  Franklin later requested and received supplemental funding for investigative services after all of the initial funding was exhausted.  Dkt. ## 97, 99. Franklin states that the investigator interviewed numerous potential witnesses identified by defendant.  Dkt. # 283-1, at 3.  However, the investigator could not verify defendant's claim that he

---

[3]     Under <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), a defendant may seek an evidentiary hearing if he can make a substantial preliminary showing that a police officer seeking a warrant made a reckless statement or omission in his affidavit and the warrant would not have been issued but for the statement or omission.  <u>United States v Moses</u>, 965 F.3d 1106, 1110 (10th Cir. 2020).

[4]     Defendant refers to his alternate explanation for a large amount of currency when the search warrant was executed as his "alibi" defense.  Defendant claims that he went to the casino the night before the search warrant was executed, and he states that he left the casino with about $4,000 in cash.  Dkt. # 276, at 113.

was at a casino the night before his residence was searched, because defendant could not provide a last name, phone number, address, or any contact information for the person who was allegedly at the casino with him.  Id.  Franklin states that she would have presented evidence of an alternate explanation for defendant's possession of a large amount of currency if she had evidence supporting this contention.  Id. at 4.

On April 14, 2014, a grand jury returned a second superseding indictment (Dkt. # 110) asserting additional charges against defendant.  The charges arose out of defendant's alleged efforts to prevent witnesses from testifying against him at trial, including the solicitation of another person to kidnap and murder three witnesses.  Franklin reviewed the discovery materials associated with new charges and filed a motion to suppress statements allegedly made by defendant to a jailhouse informant.  Dkt. ## 148, 149.  The Court entered a sealed opinion and order (Dkt. # 170) denying defendant's motion to suppress.  However, the Court did sever the trial of counts one through seven from the witness tampering charges against defendant to avoid any unfair prejudice to Deloera-Escalera that could result from a single trial on all of the pending charges.  Dkt. # 240, at 6-7.

Defendant exercised his right to a jury trial.  On the first day of trial, the Court made a record with defendant concerning any offer to enter a plea agreement that had been made by plaintiff, and Franklin represented that plaintiff had made an offer in which defendant would plead guilty to conspiracy to commit murder and possession of a firearm in furtherance of a drug trafficking crime.  Dkt. # 241, at 6-7.  Franklin met with defendant to convey the offer to him and an interpreter was present for the meeting.  Id.  The Court questioned defendant about the plea agreement that had been offered to him, and he stated that it was his decision to reject the offer and proceed to trial.  Id. at 7.  The jury trial for counts one through seven lasted five days.  Mackenzie testified about the search

of 476 South 68th East Avenue and his encounter with defendant, and he explained that he spoke to defendant in English. Id. at 129-31. Defendant denied that he used the nickname "Poncho" and he provided a false name to Mackenzie when he was asked to identify himself. Id. at 131-33. Several witnesses testified throughout the trial that they had interacted with defendant using the name "Poncho." Dkt. # 242, at 79-94; Id. at 175; Id. at 228-29; Dkt. # 243, at 26, 37; Id. at 52-53; Id. at 94-95. Franklin conducted an extensive cross-examination of Mackenzie and attempted to highlight the lack of certain drug paraphernalia in the residence where police initially encountered defendant. Dkt. # 242, at 15. Two of the key witnesses against defendant were Diaz and Riley, and both witnesses described a long-term relationship with defendant during which they purchased large quantities of methamphetamine from him. Dkt. # 243, at 97-111, 188-204. Diaz testified that defendant spoke English and served as a translator when Diaz was interacting with Spanish-speaking persons. Id. at 104-05. Riley testified that she was introduced to defendant by Kristin Wood, but Wood was not called as a witness at trial. Id. at 184-85. At the close of plaintiff's case-in-chief, Franklin made a motion for judgment of acquittal under Fed. R. Crim. P. 29, and her motion was denied. Franklin called two witnesses on two defendant's behalf, and plaintiff called Riley as a rebuttal witness after defendant rested. Franklin renewed defendant's Rule 29 motion, and the motion was denied. Dkt. # 244, at 160.

Defendant was convicted on counts one, two, four, and six of the second superseding indictment. Dkt. # 199. Before trial could begin on counts eight through ten, the parties advised the Court that defendant intended to offer a plea of guilty to a superseding information (Dkt. # 195) charging him with attempting to intimidate or persuading three witnesses from testifying at his criminal trial in violation of 18 U.S.C. § 1512(b). Defendant's guilty plea was made pursuant to a

plea agreement (Dkt. # 207) and plaintiff agreed to dismiss counts eight, nine, and ten of the second superseding indictment.  Dkt. # 246, at 5.  At the change of plea hearing, the Court asked the parties if any other or better plea offer had been made to the defendant as to counts eight, nine, and ten, and counsel for both parties agreed that no better offers had been made to defendant.  Id. at 7.  Defendant advised the Court that he wished to proceed with the change of plea and he was pleading guilty of his own free will.  Id. at 8, 13.  Defendant admitted that he arranged for two person to be released from prison on bond, and he directed those individuals to kidnap three witnesses and take them to Mexico so they could not testify against him at trial.  Id. at 31-32.  The Court accepted defendant's guilty plea and advised  defendant that a presentence investigation report (PSR) would be prepared by the United States Probation Office.  Id. at 35.

The PSR states that defendant was the leader of a drug trafficking syndicate based in Tulsa, and he relied upon several dealers, including Diaz, to distribute methamphetamine.  The total drug quantity attributable to the conspiracy was 44.79 kilograms and this resulted in a base offense level of 36.  The PSR includes enhancements for the use of violence against witnesses, maintaining a drug-involved premises, attempting to prevent witnesses from testifying, and his role in the offense, and his total offense level for count one was 45.  The offense level of 45 exceeded the maximum offense level of 43 under the sentencing guidelines, and the total offense level was reduced to 43.  Combined with a criminal history category of I, the advisory guidelines sentencing range was life as to count one, 240 months as to count two, 120 months as to count four, and 60 months as to count six, with the sentence for count six to run consecutively to any other sentence imposed.  Franklin submitted 12 objections to the PSR, and she filed a motion for variance (Dkt. ## 214, 215) and a sentencing memorandum (Dkt. # 222).

At the sentencing hearing, the Court overruled defendant's objections to the PSR but granted in part his motion for a downward variance. The Court sentenced defendant to total term of imprisonment of 300 months. Dkt. # 227, at 3. Franklin filed a timely notice of appeal for defendant and she was permitted to withdraw as counsel on appeal. Dkt. ## 233, 253. Defendant retained Laura Deskin to represent him on appeal, and Deskin argued that the Court erred when it found that Mackenzie's affidavit provided probable cause for a search of 476 South 78th East Ave. Dkt. # 263, at 3. The Tenth Circuit Court of Appeals determined that defendant did not raise this specific issue before the district court and the issue raised on appeal was waived under Fed. R. Crim. P. 12(e). Defendant filed a petition for writ of certiorari, and his petition was denied on January 9, 2017. Dkt. # 275. Defendant had one year from the date that his convictions and sentence became final to file a § 2255 motion. 28 U.S.C. § 2255(f)(1). On January 2, 2018, defendant filed a § 2255 motion and his motion (Dkt. # 276) is timely.

## II.

Defendant has filed a motion to vacate, set aside, or correct sentence under § 2255 (Dkt. # 276), and he asserts four grounds for relief. First, he argues that Franklin provided ineffective assistance of counsel by failing to conduct an adequate investigation and failed to present exculpatory evidence. Dkt. # 276, at 18-19. Second, he claims that Franlin failed to "bridge the language barrier" when she did not have an interpreter present at all of her meetings with defendant. Id. at 20. Third, defendant lists a series of general accusations that he received ineffective assistance of counsel. Id. at 22-23. Fourth, defendant generally argues that his constitutional rights were violated at nearly every stage of the proceedings. Id. at 12.

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688.  In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690.  Moreover, review of counsel's performance must be highly deferential.  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that counsel's deficient performance prejudiced the defendant to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993).   In Glover v. United States, 531 U.S. 198, 199 (2001), the Supreme Court held that "any amount of actual jail time has Sixth Amendment significance."  Thus, the prejudice prong of the Strickland test does not require that any increase in sentence must meet a standard of significance.  See United States v. Horey, 333 F.3d 1185, 1187-88 (10th Cir. 2003).

**Failure to Investigate or Present Exculpatory Evidence (Ground One)**

Defendant argues that Franklin failed to investigate and present potential exculpatory evidence that would have affected the outcome of the trial.  Dkt. # 276, at 19.  He claims that Franklin failed to investigate his allegations that he went to the casino the night before the search warrant was executed at 476 South 78th East Avenue, and it appears that he is suggesting that this would have provided an alternate explanation for his possession of a large amount of currency.  Id. Franklin allegedly failed to offer at trial the testimony of a private investigator who could have shown that Kristin Wood made out of court statements that contradicted her trial testimony.  Id.  He also claims that Franklin failed to offer exculpatory evidence that he had never used the nickname "Poncho."  Id.

Defendant has filed an affidavit (Dkt. # 276, at 112-22) stating that he went to the casino on the evening of January 7, 2013, and he left the casino with approximately $4,000 in cash.  Dkt. # 276, at 112.  He claims that his friend Rogelio dropped him off at a party at 476 South 78th East Avenue on the morning of January 8, 2013, and he woke when police officers were attempting to enter the house.  Id. at 113.  Franklin states that she was aware of defendant's allegations concerning the source of the money, and she directed a private investigator to look into defendant's claims.  Dkt. # 283-1.  However, defendant could not provide a last name, phone number, address, or any other information about "Rogelio," and there was no way to verify defendant's claim that he went to the casino.  Id. at 3-4.  Franklin states that she would have presented any evidence concerning an alternate explanation for defendant's possession of a large amount of currency if she had any evidence supporting these allegations.  Id.  The record is clear that the Court authorized funding for Franklin to hire a private investigator, and Franklin requested supplemental funding for this purpose

after the initial amount of $2,000 had been exhausted.  Dkt. ## 53, 99.  The Court also notes that there is no inconsistency between defendant's and Franklin's account of the events, and Franklin states that she was aware of defendant's allegations concerning the source of the money.  She requested that her private investigator look into defendant's allegations, but his allegations were so vague that there was no way to confirm his claim.  Dkt. # 283-1, at 3.  The Court finds that Franklin did not disregard defendant's claim about visiting the casino on January 7, 2013, and she acted reasonably by asking her investigator to look for evidence to support defendant's allegations.  It is not surprising that the investigator could not verify defendant's allegations based on the scant information provided by defendant, and Franklin was not required to expend substantial resources to investigate defendant's allegations with little likelihood of finding relevant or exculpatory evidence.  The Court also notes that defendant cannot show that he was prejudiced by Franklin's allegedly deficient performance.  Defendant could have testified at trial and allowed the jury to consider these allegations, and he stated on the record that had made his own decision not to testify at trial.  Dkt. # 244, at 96.  The Court also notes that the evidence presented at trial established that the drug conspiracy continued over several months, and defendant's allegations about the source of the money in his possession on January 8, 2013 would have had limited exculpatory value.

Defendant argues that Franklin should have called a private investigator to testify at trial about contradictory out of court statements made by a witness, Kristin Wood.  Dkt. # 276, at 19. This claims is meritless.  The Court has reviewed the entire trial transcript and Wood did not testify at trial.  Therefore, Franklin had no obligation to call the private investigator as witness for the purpose of impeaching Wood with prior inconsistent statements.

Defendant argues that he never used the nickname "Poncho" and Franklin should have put on evidence at trial he had never been known as "Poncho." The record shows that Franklin was aware that defendant disputed that he used the name "Poncho," and she brought this issue to the Court's and jury's attention at relevant stages of the case. For example, Franklin cross-examined Mackenzie at the suppression hearing about "Poncho," and Mackenzie admitted that he had little information other than Diaz's statements that could be used to identify "Poncho." Dkt. # 86, at 33. At trial, Mackenzie acknowledged on cross-examination that defendant denied using the name "Poncho." Dkt. # 241, at 131-33. However, numerous witnesses at trial testified that they knew defendant as "Poncho." Dkt. # 242, at 79-94; id. at 175; id. at 228-29; Dkt. # 243, at 26, 37; id. at 52-53. Defendant could have testified at trial and explained that he was not known as "Poncho," but he made an informed decision not to testify after a colloquy with the Court. Dkt. # 244, at 96. Franklin objected to the PSR on the ground that defendant denied that he used the name "Poncho," and the Court overruled the objection based on witness testimony. Dkt. # 248, at 4. Defendant's allegation that Franklin failed to investigate or present evidence that he denied using the name "Poncho" is not supported by the record, and it is apparent that Franklin repeatedly raised this issue during many stages of the proceedings. Ground one of defendant's § 2255 motion is denied in its entirety.

**Failure to Meet with Defendant using an Interpreter (Ground Two)**

Defendant argues that Franklin failed to provide an interpreter when she met with defendant or she met with defendant using an interpreter who was unqualified, and this prevented defendant from adequately assisting in his own defense. Dkt. # 276, at 20. Plaintiff responds that Franklin used the services of an interpreter when she met with defendant throughout the case. Dkt. # 283, at

12

20-21.  However, it became apparent to Franklin that defendant understood English and he regularly attempted to speak before the interpreter completed the translation, and defendant's constant interruptions of the interpreter made it difficult for her to converse with defendant.  Id. at 21.

Defendant states that he does not speak or understand English well, but Franklin began meeting with defendant without bringing an interpreter to the meetings.  Dkt. # 276, at 20, 117. Defendant's ability to speak and understand English was a key issue at the suppression hearing, and defendant testified at the hearing that his ability to communicate in English was very limited.  Dkt. # 86, at 67-68.  Plaintiff responded by offering the testimony of Riley, who testified that she had known defendant since June 2012 and she always communicated with him in English.  Dkt. # 87, at 10-11.  Riley described defendant's English as "a little choppy" but he never had any difficulty communicating with her.  Id. at 14, 16.  Mackenzie also testified at the suppression hearing that he spoke to defendant in English, and cooperating witnesses involved in the investigation told Mackenzie that they communicated with defendant in English.  Dkt. # 86, at 23, 26.  The Court found that Riley's and Mackenzie's testimony concerning defendant's familiarity with the English language was credible, and the Court found that defendant was "comfortable conversing in English, even though it was not his primary language."  Dkt. # 73, at 14.

Franklin states that she initially brought an interpreter every time she met with defendant, and her records show that she paid for the services of an interpreter six times between December 2013 and March 2014.  Dkt. # 283-1, at 4.  Franklin recalls that she had no concerns about the qualifications of any interpreter, and any problems with the interpreter were due to defendant's constant interruptions.  Id. at 5.  It became clear to Franklin that defendant could effectively communicate in English, and he was speaking to her before the interpreter could finish the

13

translation.  Id.  Franklin came to the conclusion that defendant's claim that he did not speak and understand English "was just not true."  Id.  Defendant advised Franklin that he moved to Oklahoma City when he was 13 and he had lived in the United States at least 15 years.  Id.  Plaintiff provided discovery materials in which defendant was speaking in English, and plaintiff also provided a disc titled "Defendant Speaking English."  Id.  Franklin stopped bringing an interpreter to her meetings with defendant and they had no difficulty communicating in English.  Id.  On August 12, 2014, Franklin met with defendant to review a plea agreement offered by plaintiff, and she brought an interpreter to ensure that defendant "fully understood every single word."  Id.  Franklin anticipated that defendant would reject the offer, but she wanted to ensure that he could not later raise a claim that the plea offer was not communicated to him in Spanish.  Id. at 6.  Franklin also used the services of an interpreter when she met with defendant to review the PSR "not because [she] had concerns about [defendant] understanding English, but merely to refute any claims he could later make due to the nature of the communication."  Id.

Franklin's affidavit is consistent with the evidence offered at the suppression hearing and at trial concerning defendant's ability to communicate in English, and defendant repeatedly understated his ability to understand and communicate in English.  The Court finds that Franklin acted reasonably by declining to bring an interpreter to every meeting she had with defendant, and defendant has not shown that any "language barrier" prevented him from participating in his own defense.  A substantial body of evidence was developed at the suppression hearing and at trial concerning defendant's ability to speak and understand English.  In particular, defendant sufficiently understood English to provide false or misleading responses to questions from police officers, and Franklin states that defendant was fully able to participate in meetings with her without an

interpreter.  Dkt. # 73, at 14; Dkt. # 241, at 131-33; Dkt. # 283-1, at 5.  In fact, the interpreter became a distraction and Franklin was able to more effectively communicate with defendant in English.  At critical meetings with defendant, Franklin did bring an interpreter to ensure that he understood every word and to prevent him from bringing precisely the type of claim that he asserts in his § 2255 motion.  Dkt. # 283-1, at 5-6.  Franklin's decision not to use an interpreter at every meeting with defendant was well with the bounds of reasonable professional conduct, and it is clear that she made an informed decision on this issue.  The Court does not find that a "language barrier" prevented defendant from assisting in his own defense, and ground two of defendant's § 2255 motion is denied.

**General Allegations of Ineffective Assistance of Counsel (Grounds Three and Four)**

Defendant makes a series of general allegations that he received ineffective assistance of counsel and that his constitutional rights were violated.  Dkt. # 276, at 11-12, 22-23.  Defendant states that Franklin "unprofessionally failed to advise [him] as to all facts and law relevant to his decision not to plead guilty and proceed to trial," and he claims there is a reasonable probability that he would have obtained a favorable plea agreement if he had received better advice from counsel.  Dkt. # 276, at 22.  The record is clear that plaintiff offered a plea agreement to defendant and this offer was conveyed to defendant.  Franklin states that she met with defendant for an hour and a half after receiving a proposed plea agreement from plaintiff, and she had an interpreter present when she met with defendant to review the plea agreement.  Dkt. # 283-1, at 6.  On the first day of trial, the Court asked Franklin if a plea agreement had been offered to defendant, and she explained that plaintiff had sent her a proposed plea agreement that would have resolved the case.  Dkt. # 241, at 7.  She stated that she had conveyed the offer to defendant and he had rejected it.  Id. The Court asked defendant if he had reviewed the plea agreement with his attorney, and he stated that it was

his personal decision to reject the plea agreement and proceed to trial. Id. Franklin states that she met with defendant many times, and he never showed any interest in negotiating a different plea agreement or pleading guilty to any of the charges against him before trial. Dkt. # 283-1, at 6-7. The Court finds no credible evidence that would support defendant's general assertion that he was not fully advised about the risks of proceeding to trial, and defendant made an informed decision to reject the proposed plea agreement.

Defendant argues that Franklin "failed to timely, properly, and effectively move for suppression of evidence," and Franklin also failed to preserve a probable cause challenge to certain evidence for appellate review. Dkt. # 276, at 22. This argument is meritless. Franklin filed motions to suppress evidence seized from 476 South 78th East Avenue and any statements made by defendant to police when they executed a search warrant of the residence. Dkt. ## 49, 50. Franklin also joined in a third motion to suppress evidence seized from 1515 South 67th East Avenue, and defendant's claim that she failed to file motions to suppress evidence is wholly inaccurate. Defendant argues that Franklin failed to preserve the specific issue that his appellate attorney sought to raise on direct appeal, which was that probable cause for a search of 476 South 78th East Avenue was lacking because Mackenzie relied solely on the statements of an unreliable informant in his affidavit for search warrant. Dkt. # 263. However, Franklin raised a similar argument by requesting a Franks hearing to challenge allegedly false statements contained in Mackenzie's affidavit, and the Court found that this request was based on a "strained" interpretation of the affidavit. Dkt. # 73, at 16-17. Defendant has made no attempt to show that a "probable cause" challenge to the affidavit would have fared any better, and Franklin did not provide ineffective assistance of counsel by failing to raise this specific issue. The record is clear that Franklin filed appropriate motions to suppress

evidence and defendant has not shown that he was prejudiced by Franklin's failure to raise the specific issue that his attorney sought to raise on appeal.

Defendant generally asserts that Franklin "unprofessionally failed to investigate or present available, material, exculpatory evidence . . . ." Dkt. # 276, at 22. Defendant's allegation is wholly conclusory and he fails to identify specific exculpatory evidence that was not investigated by Franklin. The Court has already considered defendant's argument concerning his "alibi" defense, and the Court has determined that Franklin investigated but could not verify defendant's allegation that he went to the casino the night before police searched 476 South 78th East Avenue. Conclusory allegations alone are not sufficient to state a valid claim under § 2255, and a district court has no obligation to hold an evidentiary hearing to allow a defendant to explore vague or conclusory allegations of ineffective assistance of counsel. United States v. Hall, 746 F. App'x 773, 776 (10th Cir. Aug. 21, 2018).[5] Defendant has failed to show that Franklin failed to investigate or present exculpatory evidence.

Defendant argues that Franklin should have advised him not to testify at trial, and he claims that he was prejudiced when the jury did not believe his trial testimony. This argument is based on the fundamentally inaccurate claim that defendant actually testified at trial, and the trial transcript plainly shows that defendant did not testify at trial. The Court advised defendant that he had the right to remain silent and he had the right not to testify at trial. Dkt. # 244, at 95-96. The Court asked defendant if he had consulted with Franklin about whether to testify at trial, and he stated that Franklin had advised him about the risks associated with testifying at trial. Id. at 96. Defendant

---

[5]     Unpublished decisions are not binding precedent in the Tenth Circuit but may be cited for their persuasive value. See Fed. R. App. 32.1; 10th Cir. R. 32.1.

stated that he did not wish to testify at trial and he was not called as a witness. Id. Even if the Court assumes that Franklin could have given defendant better advice on this issue, defendant's claim that he was prejudiced by testifying at trial is meritless, because he did not actually testify at trial.

Defendant claims that Franklin failed to request appropriate jury instructions or object to "insufficient instructions." Dkt. # 276 at 23. Defendant does not identify any specific jury instruction that should have been requested or objected to by Franklin. Defendant also fails to mention that Franklin filed proposed jury instructions (Dkt. # 107). The trial transcript shows that Franklin was prepared for the instruction conference and she made appropriate objections to the verdict form and jury instructions that were incorporated into the final version of both documents. Dkt. # 224, at 162-170. Defendant's vague allegations concerning Franklin's performance in regard to the jury instructions in not supported by the record.

Defendant claims that Franklin failed to "investigate or present available evidence and legal authority material to the sentencing of [defendant]," and he claims that Franklin failed to object to "unlawful, false and unreliable evidence" used to calculate defendant's advisory guideline sentencing range. Dkt. # 276, at 23. Defendant again fails to cite any specific allegation or evidence in support of this claim and, in any event, his claim is not supported by the record. Franklin filed a motion for non-guideline sentence and objections to the PSR, and Franklin successfully argued for a sentence well below the advisory guideline range of life imprisonment. Dkt. ## 214, 215. Franklin's performance during the sentencing phase was reasonable, and the Court finds that defendant's vague claim concerning Franklin's alleged deficient performance during the sentencing phase of the proceedings is meritless.

Defendant claims that his appellate attorney failed to "investigate or present the strongest issues available . . . for his direct appeal and failed to preserve viable issues for collateral review." Dkt. # 276, at 23. However, defendant has not identified any specific issue that he believes should have been raised on direct appeal, and the Court has already considered defendant's claim that Franklin failed to preserve the "probable cause" issue for direct appeal. The Court has fully reviewed defendant's § 2255 motion and can discern no other specific claim concerning the performance of Franklin or his appellate attorney. Defendant has also not shown that the actions of Franklin or his appellate attorney have prevented him from raising any claim in his § 2255 motion.

Defendant argues that Franklin had a conflict of interest that affected her performance at every stage of the proceedings. Id. However, he offers no specific allegations or evidence in support of this claim, and it is not the Court's obligation to construct a claim on defendant's behalf. Franklin states that she was not aware of any conflict of interest that prevented her from representing defendant, and there is no evidence before the Court suggesting that there was a conflict of interest. Dkt. # 283-1, at 8.

Finally, defendant states that his "conviction and sentence are violative of the First, Fourth, Fifth, Sixth, and Eighth Amendments to the Constitution," and he could also be alleging an ineffective assistance of counsel claim based on cumulative error. Dkt. # 276, at 12, 24. Defendant offers no allegations in support of this general claim that his constitutional rights were violated, and his conclusory allegation does not state a claim for relief under § 2255. As to defendant's claim of cumulative error, the Court has not found that defendant has asserted any colorable claim of ineffective assistance of counsel and, therefore, defendant has no viable claim for cumulative error.

The Court finds that grounds three and four of defendant's § 2255 motion should be rejected in their entirety.[6]

**III**.

Pursuant to 28 U.S.C. § 2253, a defendant is required to obtain a COA before appealing a final order in a proceeding under 28 U.S.C. § 2255.  Section 2253(c) instructs that the court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing."  A defendant can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings.  Slack v. McDaniel, 529 U.S. 473 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).  After considering the record in this case, the Court concludes that a COA should not issue because defendant has not made a substantial showing of the denial of a constitutional right.  The Court does not find that the issues raised by defendant are debatable among jurists or that the Tenth Circuit would resolve the issues differently, and defendant has not made a substantial showing of the denial of a constitutional right.

**IT IS THEREFORE ORDERED** that defendant's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (Dkt. # 276) is **denied**.  A separate judgment is entered herewith.

---

[6]      As to defendant's request for an evidentiary hearing and discovery, the Court finds that the record conclusively demonstrates that defendant is not entitled to relief under § 2255 and there are no disputed issues of fact warranting discovery.  Defendant also fails to identify what evidence or testimony is likely to be developed at an evidentiary hearing, and district courts "are not required to hold evidentiary hearings in collateral attacks without a firm idea of what the testimony will encompass and how it will support a movant's claims."  United States v. Moya, 676 F.3d 1211, 1214 (10th Cir. 2012) (quoting United States v. Cervini, 379 F.3d 987, 994 (10th Cir. 2004)).

**IT IS FURTHER ORDERED** that the Court declines to issue a certificate of appealability as to any issue raised in defendant's § 2255 motion (Dkt. # 276).

**IT IS FURTHER ORDERED** that defendant's motion for a ruling on his § 2255 motion (Dkt. # 289) is **moot**.

**IT IS FURTHER ORDERED** that the Court Clerk is directed to send a copy of this Opinion and Order to the Tenth Circuit Court of Appeals in reference to Appeal Number 20-5090.

**DATED** this 13th day of November, 2020.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE